(No. 3030—

EVELYN MCINTOSH, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed May 22, 1939.*

HARRIS B. GAINES, for claimant.

JOHN E. CASSIDY, Attorney General; MURRAY F. MILNE, Assistant Attorney General, for respondent.

Mr. Justice Linscott delivered the opinion of the court:

The complaint in this case alleges that the claimant was the wife of Theodore McIntosh, deceased; that on, and for a long time prior to August 7, 1936, Theodore McIntosh was an enlisted member of the 8th Regiment of the Illinois National Guard, serving with the rank of sergeant; that on the day last mentioned, he, with other members of his regiment, was ordered by his superior officers to engage in Field Training maneuvers with the Howitzer Co. 8th Infantry Illinois National Guard in the State of Michigan; that he served from then, until August 22nd of the same year.

The complaint alleges, as supported by the proof, that on and prior to August 7, 1936, the deceased was in good, sound physical condition; that between August 7, 1936 and August 22, 1936, while serving with the said company, the deceased became ill with physical disorders of his abdomen as the result of his military services, and while performing activities requiring severe exertion, and strain, to-wit: heavy marching and handling heavy field equipment; that upon his return to his home on August 22, 1936, he was still suffering from said illness; that as the result of said illness or said injury, he was confined to his bed immediately upon his return to his home, and became progressively worse until August 24, 1936 when he attempted to report his illness to military authorities; that because of an alleged disruption of telephonic communication, claimant did not succeed in reporting the illness or injury to the military authorities until August 26, 1936, and on that day deceased was removed from his home to the military hospital at Fort Sheridan, Illinois, and as a direct result of said illness said deceased died on August 30, 1936 at the military hospital at Fort Sheridan, Illinois.

The widow claims compensation for the death of Theodore McIntosh "which said death occurred while deceased was engaged in line of duty with said military forces of the State of Illinois." No specific amount is claimed.

It will be noted that the complaint does not make any specific averments as to the kind of illness or the cause thereof. From the evidence of the widow, it appears that the deceased had had no previous illness and had always been in good health; that during the time that the deceased was

engaged in Field Training maneuvers, other soldiers in the same company and regiment were stricken with dysentery, which caused disablement for varying periods of time; that during the time that the deceased was in encampment, on to-wit: August 18, 1936, he was stricken with what his comrades thought was dysentery; that his illness continued during the remainder of the encampment and upon returning to his home the deceased took to his bed, growing gradually worse until he was sent to Fort Sheridan Military Hospital on August 26, 1936, where he died from acute gangrenous appendicitis and peritonitis.

Our attention is called to Section 142 of Chapter 129 Illinois Revised Statutes 1937, the same being the Military and Naval Code of the State of Illinois, which provides as follows:

"Any officer or enlisted man of the National Guard or Naval Reserve who may be wounded or disabled in any way, while on duty and lawfully performing the same, so as to prevent his working at his profession, trade or other occupation from which he gains his living, shall be entitled to be treated by an officer of the medical department detailed by the surgeon general, and to draw one-half his active service pay, as specified in Sections 3 and 4 of this article, for not to exceed thirty days of such disability, on the certificate of the attending medical officer; if still disabled at the end of thirty days, he shall be entitled to draw pay at the same rate for such period as a board of three medical officers, duly convened by order of the Commander-in-Chief, may determine to be right and just, but not to exceed six months, unless approved by the State Court of Claims."

Claimant makes the argument that there seems to be no question but that the deceased died from an illness or injury occasioned or received in line of his official duty as a member of the National Guard of the State of Illinois; that the evidence is uncontradicted throughout the whole record on that score; that a military board was convened by the military authorities to inquire into the cause surrounding the death of the deceased, and the finding of this board was "that the deceased, Sergeant Theodore McIntosh, was afflicted with an illness, incurred in line of duty."

The deposition of Claudius L. Forney was taken on behalf of the claimant. He testified that he lives at 363 E. 51st Street, Chicago, Illinois; that in 1927, he was licensed to practice medicine in the State of Illinois, and has been a practicing physician in the State of Illinois since that time; that he spent two years as in interne in the County Hospital in

Chicago before receiving his license; that he is a graduate of the Ohio State University and a Post Graduate of the University of Chicago; that he had been a member of the staff, department of surgery, of the Provident Hospital, and was a member of the staff of the Cook County Bureau of Public Welfare Physicians, and that he was a medical officer of the Eighth Regiment, Illinois National Guard. He further testified that as a medical officer for the second battalion, he treated the deceased during the encampment in Michigan; that the deceased was a young man, in his late twenties. (His age was twenty-nine years his last birthday, and the record shows that the deceased weighed about 180 pounds.)

Dr. Forney further testified that during the encampment in Michigan in 1936, there was a general epidemic of gastrointestinal upset, which they called dysentery, but they were never able to locate the germ to make a proper diagnosis, except a general epidemic of dysentery. This disease had been prevalent in the locality where the camp was located, before they went to camp, and its probable source was through the water. Almost every member of the National Guard was afflicted to some degree, and the hospital was overcrowded. The doctor testified that the deceased being assigned to the second battalion, came under Dr. Forney's care and he, the doctor, had diagnosed the case as dysentery, along with the rest of the intestinal upset. He could not recall how many times he had seen him, but this doctor gave as his opinion, based upon a reasonable degree of medical certainty, that the deceased who had been encamped at Pearl, Michigan, for several days in outdoor tents, during an epidemic of dysentery, had dysentery; that after a few days encampment at Pearl, this organization broke camp and proceeded, partly by forced marches, on foot and by trucks, stopping for over night bivouac en route, to Camp Custer, Michigan, that the activities of this organization included living in outdoor tents, having strenuous field exercises, in addition to the usual routine of soldiers.

A hypothetical question based upon these facts was put to Dr. Forney: Assuming doctor, that on the 18th day of August, 1936, during the said field training at Camp Custer, Michigan, the deceased, (who is referred to as a hypothetical man) became ill and complained of stomach disorder; that he was examined by a medical officer of the organization who

found him to be suffering from gastro-intestinal disorder to the extent that the soldier was unable to perform his assigned duties; that on the 21st day of August, 1936, camp was broken at Camp Custer, Michigan, and they proceeded to their homes in Chicago, by train and boat, with short foot marches incident to reaching the said transportation facilities, and in reaching the armory of this organization after the arrival of the boat in Chicago; that en route from Camp Custer, Michigan to Chicago, Illinois, the deceased, still complained of his illness and was not able to carry his pack and individual equipment as was required by other members of the organization. The hypothetical question further assumed that upon arrival of the soldiers at 3517 Giles Avenue, Chicago, Illinois, on August 22, 1936, deceased was still complaining of pains in the region of the abdomen; that shortly after the arrival at the armory, he went to his home, where he went immediately to bed and remained in bed at his home from August 22 to August 25th of that year, during which time the deceased refused to eat food prepared for him and complained of violent pains in his abdomen and side. On August 26, 1936, this soldier was transferred by ambulance from Chicago to the station hospital at Fort Sheridan, where his case was diagnosed as appendicitis, acute, gangrenous peritonitis, acute, generalized, caused by appendicitis. On the same day, an appendectomy operation through the right rectus incision with one rubber drain inserted was performed under procain anesthesia. The deceased died at 1:30 in the morning on August 30, 1936, at the station hospital at Fort Sheridan, Illinois.

With these facts in mind, Dr. Forney based his opinion upon his knowledge and experience as a physician and surgeon, and stated that it was his opinion based upon a reasonable degree of medical certainty that there was a direct causal connection between the illness with which the deceased was afflicted at Camp Custer, Michigan, on or about August 18, 1936, and subsequently thereto, and the condition of ill-being found when he was admitted to the hospital at Fort Sheridan. He also stated that inasmuch as the appendix is part of the gastro-intestinal tract, any illness so intensive as a dysentery would involve the whole gastro-intestinal tract, and in his opinion the appendix would be involved, especially where one was living under the conditions that this soldier

lived, and that these conditions were conducive to continuing the irritation of the appendix and the rest of the gastro-intestinal tract; that in civilian life, a person suffering from a gastro-intestinal disorder would be put in bed, and put on liquid diets and kept quiet. This man was subjected to camp duties, such as marching and if he took food he had to take the coarse food that is provided at camp. The coarse food and living conditions were responsible for the result of the appendicitis. At Fort Sheridan, the deceased, was found to be suffering from gangrenous appendicitis and peritonitis. The gangrenous condition followed the appendix condition and peritonitis did not set in until the appendix became gangrenous and ruptured. During this period of time all the soldiers in the National Guard were on routine army rations, and no provisions were made for preparing special diets for sick soldiers. It was very dusty there, and the food was frequently full of dust and grit, and after those long marches they had to eat dust, grit and all, which was also a possible source of infection and irritation to the gastro-intestinal tract. A well person might get along fairly well, but one who was suffering from intestinal trouble should have had a more careful diet. The doctor gives as his opinion that the food conditions aggravated the conditions of the deceased.

Under the evidence in this case, we are of the opinion that there is a direct causal connection between the illness of the deceased suffered at Camp Custer, Michigan, and the conditions found by the operating surgeons at Fort Sheridan.

Deceased had been employed at a CCC camp at Palatine, Illinois for about eighteen (18) months prior to the time of his death and received a compensation of Forty-five Dollars ($45.00) per month, together with his board. Before that, he was an automobile mechanic and earned Forty-five Dollars ($45.00) per week, and the record shows he supported a wife and that they had no children.

In view of all the facts and circumstances, we are of the opinion that the dysentery suffered by the deceased was contracted at camp and the medical testimony is to the effect that the appendix was aggravated and that there is a causal connection between the ailment that he suffered and his death, and the public at large was not exposed to this ailment as he was.

We, therefore, make an award in favor of Evelyn McIntosh, wife of the deceased, in the sum of Four Thousand Dollars ($4,000.00) and recommend that the legislature make an appropriation for this amount.